IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

THERMAN D. SMITH,                          :
          Plaintiff                      :
     v.                                  : Case No. 3:23-cv-3-KAP
LIEUTENANT SANFORD, *et al.*,              :
          Defendants                     :

Memorandum Order

On July 12, 2022, plaintiff Smith was a pretrial detainee in the custody of the United States Marshal at the Cambria County Prison when he and other inmates were subjected to a "raid" for contraband followed by a strip search. Smith had been indicted in May 2021 in United States v. Smith, Case No. 2:21-cr-239-NR (W.D.Pa.), a state prosecution adopted federally, and in June 2021 Smith was writted out of the Allegheny County Jail and had his initial federal appearance on June 28, 2021. Smith waived a detention hearing and remained in the Marshal's custody at Cambria County and at the Northeast Ohio Corrections Center until he entered a guilty plea before the Honorable Nicholas Ranjan on December 20, 2022. Smith was sentenced in May 2023. In a complaint dated December 29, 2022 and filed on January 9, 2023, Smith claimed that five employees at the Cambria County Prison violated his civil rights in conducting the strip search and in subsequent related events.

Smith alleged that as part of a search for contraband corrections officers took groups of inmates to the prison gymnasium for a strip search. The strip search was conducted by defendant corrections officers Rager and Ates, supervised by defendant Lieutenant Sanford. Smith alleges that the room was partitioned with four dividers to allow private searches of five inmates at a time. However, instead of searching inmates in groups of five and clearing that group before the next group was brought in, "inmates were shuffled in and out of the room once they were done, regardless of where you were in the room," and therefore Smith saw and was exposed to the view of "other naked or semi-naked inmates." Smith alleges that he personally was "fully naked (unclothed) in front of numerous inmates and multiple corrections officers." Rager strip searched Smith; Ates "was telling everyone to "shut up and stop complaining;'" and Sanford was leading the search and overseeing the staff. When Smith returned to his cell he and his cellmate found all the food that they purchased at the commissary had been taken. Smith made a phone call to the PREA hotline on August 20, 2022 complaining about the search, which he characterizes as sexual harassment and sexual assault. Smith had "multiple conversations" with Sanford on July 12, 2022 about a remedy for the loss of his food items without satisfaction. He then filed a grievance on July 14, 2022 about the taking of his food that defendant Lieutenant Fox "never answered." Smith also filed a grievance on

August 21, 2022 about the way the search was conducted. Smith complained that the way the search was conducted "was totally rude" but sought no specific relief. Fox denied the grievance on September 8, 2022 with a statement that dividers were set up for privacy during strip searches. Smith also filed a request to defendant Deputy Warden Descavish on September 4, 2022, "inquiring about maybe speaking to you, to gain closure and clarity on my situation," claiming that "[h]ere at this facility on 7/12/22, I was sexually abused" and that no one had "gotten back to me" in response to his PREA call. Smith's request did not refer in any way to the strip search. Smith called the PREA hotline a second time after this request: he makes a note on an exhibit suggesting the second call was the next day, September 5, 2022, while in the complaint he alleges the second call was on September 8, 2022. In either case Descavish replied on September 7, 2022 that the "[p]rison administration is not aware of your allegation" and had no record of a PREA call, but that if Smith wanted to submit a report of abuse "do so in detail immediately so an appropriate investigation can be completed."

Smith seeks compensatory and punitive damages because the taking of his commissary items caused hunger and "is simply HeartBreaking;" the way the search was conducted caused emotional distress because it was "[d]ehumanizing, condescending, barbaric, erroneous … None of those words are sufficient enough to explain what happened that day."

Defendants move to dismiss the complaint under Fed.R.Civ.P. 12(b)(6) for failure to state a claim. Because plaintiff was an inmate when he filed the complaint and is proceeding *in forma pauperis*, I have an independent duty to screen the complaint under the provisions of the Prison Litigation Reform Act. The Prison Litigation Reform Act's screening requirements for inmate plaintiffs proceeding *in forma pauperis* are set out at 28 U.S.C.§ 1915(e)(2):

(2)    Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that --
(A)    the allegation of poverty is untrue; or
(B)    the action or appeal --
(i)    is frivolous or malicious;
(ii)    fails to state a claim on which relief may be granted; or
(iii)    seeks monetary relief against a defendant who is immune from such relief.

*See also* 28 U.S.C.§ 1915A. The screening standards under Rule 12(b)(6) and the PLRA are the same: to state a claim against any defendant, Fed.R.Civ.P. 8(a) requires a plaintiff to set out a short and plain statement containing sufficient factual matter that if accepted as true would state a legal claim that is plausible on its face. *See* <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). In the Supreme Court's words, plaintiff must allege enough facts in the complaint to "nudge" a claim "across the line from conceivable to plausible." *Id.,* 556 U.S.

at 683, *quoting* Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). In a civil rights case the plaintiff must allege facts permitting the inference that each defendant was personally involved in the alleged wrongdoing. Argueta v. U.S. Immigration & Customs Enforcement, 643 F.3d 60, 71 (3d Cir. 2011); Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir.2005). No one has made an issue of any remedy or process that might have been sought from the Marshal or from this court since Smith was a federal detainee, and I mention it only to point out that it does not change the case against these defendants.

There is no claim for the lost commissary items. It cannot be overlooked that none of the named defendants is alleged to have taken Smith's food. No claim for the taking itself is stated against any named defendant. Fox's only alleged role is his denial of Smith's grievance, and that does not state a federal claim. Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999).

If Smith alleged that one of the named defendants took his food or had named John Doe defendants, that would not solve his problem. Negligence by a John Doe corrections officer that caused a deprivation of Smith's property by allowing another inmate returning to the unit before Smith to gain access to Smith's cell, or even an intentional taking of Smith's property by a John Doe corrections officer who wanted to snack on Smith's commissary, does not constitute a deprivation of Smith's federal civil rights. A negligent act by a person acting under color of state law (here, prison officials) that causes loss of property may violate state law, but it does not violate the Constitution. Daniels v. Williams, 474 U.S. 327 (1986). An intentional deprivation of property by prison officials does not violate the Constitution if a meaningful post-deprivation remedy for the loss is available. Hudson v. Palmer, 468 U.S. 517 (1984) Pre-deprivation notice is not constitutionally required. *See id.*, 486 U.S. at 533.

Inmates, whether in state or local prisons, have a post-deprivation remedy for the sort of loss Smith alleges because Pennsylvania has waived sovereign immunity for tort claims based on loss of personal property in state custody. 42 Pa.C.S.§ 8522(b)(3)(waiver of state governmental immunity); 42 Pa.C.S.§ 8542(b)(2)(waiver of local governmental immunity). Since it is not necessary that a state provide any particular type of remedy, Davidson v. O'Lone, 752 F.2d 817, 830 (3d Cir. 1984)(*en banc*), *aff'd sub nom.* Davidson v. Cannon, 474 U.S. 344 (1986), or that Smith "be able to recover under these remedies the full amount which he might receive in a § 1983 action," Hudson v. Palmer, 468 U.S. at 535, for the state's remedy to be adequate, Smith has no federal claim. He can and must seek a remedy in state court for his lost commissary.

As for the lack of privacy in the strip search, it is neither sexual abuse nor sexual harassment. Group strip searches, even where there is the possibility of female corrections officers viewing naked male inmates, have been repeatedly upheld. Small v. Wetzel, 528 Fed.Appx. 202, 207 (3d Cir. 2013); Dillon v. Clackamas County, No. 20-

35544, 2022 WL 1285042, at *3 (9th Cir. Apr. 29, 2022)(strip search in groups, no more than six inmates at a time, was not an exaggerated or excessive search for contraband). Smith points out that on November 29, 2022, the prison carried out a search the way he suggests it should be carried out. But that the prison's procedures could be and were improved or that the prison failed to follow its own procedures in July but followed them in November does not imply that the July search was unconstitutional.

The Court of Appeals, in Grayson v. Mayview State Hospital, 293 F.3d 103 (3d Cir.2002) and similar cases, directs district courts to allow plaintiffs in civil rights cases leave to amend unless that amendment is "futile" or "inequitable." Allowing amendment of a complaint after defendants have moved to dismiss is always inequitable, and based on what plaintiff has alleged against these defendants, in this particular case it is futile. The complaint is dismissed without prejudice to plaintiff bringing his loss of commissary claim in state court. This is a final appealable order and the Clerk shall mark this case closed.

DATE: March 28, 2024          _____

Keith A. Pesto,
United States Magistrate Judge

Notice by ECF to counsel and by U.S. Mail to:

Therman D. Smith, Reg. No. 48460-509
F.C.I. Hazelton
P.O. Box 5000
Bruceton Mills, WV 26525